IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**THOMAS HEALTH SYSTEM, INC.,**
**Employer Below, Petitioner**

**FILED**
**December 27, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-384**        (JCN: 2021007381)

**RACHAEL THOMAS,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Thomas Health System, Inc., ("THS") appeals the July 31, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Rachael Thomas filed a response.[1] THS did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted Ms. Thomas a 17% permanent partial disability ("PPD") award, and instead granting her a 25% PPD award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Thomas injured her left upper arm on October 7, 2020, when she was changing, cleaning, and pulling a patient up in their bed. Ms. Thomas went to the Emergency Department at Thomas Memorial Hospital the next day and reported an occupational injury. She indicated that she felt a pulling sensation in her left trapezius and then later developed paresthesia, or numbness, in her fingers and left upper arm. She was diagnosed with strain of the left trapezius, and paresthesia of the left upper extremity from compression of the cervical plexus.

On October 9, 2020, Ms. Thomas was seen by Bruce Haupt, M.D. She reported that since the injury she had experienced persistent numbness and swelling in her left arm. On October 26, 2020, Ms. Thomas returned to see Dr. Haupt and reported significant continued pain that originated in the left lower side of her neck and radiated down into her fingers, and she had noticed some clawing of those fingers. Dr. Haupt opined that the claimant's

---

[1] THS is represented by Charity Lawrence, Esq. Ms. Thomas is represented by G. Patrick Jacobs, Esq.

cervical radiculopathy at C8 had worsened. Dr. Haupt recommended an MRI and noted Ms. Thomas may need a referral to a pain management specialist or neurosurgeon. Also on October 26, 2020, the claim administrator issued an order that held the claim compensable for the left arm/shoulder/hand.

Ms. Thomas underwent a cervical MRI on November 17, 2020, revealing posterior disc osteophyte complex and uncovertebral hypertrophy at C5-C6 with mild spinal cord compression at that level; moderate canal stenosis and mild to moderate left and mild right neural foraminal narrowing; and mild cord compression without cord signal abnormality at C6-C7 from a posterior disc osteophyte complex with mild spinal canal stenosis at that level. An EMG performed on November 23, 2020, revealed left C-8 radiculopathy.

On October 27, 2021, Ms. Thomas underwent C5-C6 arthroplasty versus anterior cervical discectomy and fusion performed by Sajeel Khan, M.D. On March 28, 2022, Prasadarao Mukkamala, M.D., performed an independent medical evaluation ("IME") of Ms. Thomas. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*"), Dr. Mukkamala opined that Ms. Thomas had 6% whole person impairment ("WPI") for loss of cervical range of motion and 10% impairment due to the anterior cervical discectomy and fusion. Dr. Mukkamala used the West Virginia Code of State Rules § 85-20 (2006) ("Rule 20") to find a total WPI of 25%. Dr. Mukkamala apportioned 8% of the impairment to preexisting degenerative conditions, leaving 17% WPI associated with the compensable injury. On October 13, 2022, David Soulsby, M.D., also performed an IME of Ms. Thomas and agreed with Dr. Mukkamala's ratings and apportionment.

Bruce Guberman, M.D., performed an IME of Ms. Thomas on July 29, 2022. Using the *Guides*, Dr. Guberman found 10% WPI for the anterior cervical discectomy and fusion, and 3% WPI for restriction in cervical range of motion. He applied Rule 20 to find that Ms. Thomas had 25% WPI. Dr. Guberman opined that there was no medical rationale for apportioning the impairment because, while Ms. Thomas had evidence of preexisting degenerative changes on imaging studies, these conditions were not symptomatic and did not cause any impairment, functional loss, or range of motion abnormalities prior to the compensable injury.

On July 31, 2023, the Board issued an order reversing the claim administrator's order granting Ms. Thomas a 17% PPD award, instead granting her a 25% PPD award. The Board found that there was no reasonable basis for apportionment in this claim and, thus, that Dr. Guberman's report was the most persuasive. THS now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

2

The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, THS argues that the medical evidence establishes that apportionment was appropriate in this case because the impairment was definitely ascertainable. THS further argues that the Board misapplied the law under *Duff* to the instant case. Finally, THS argues that the Board failed to recognize and apply West Virginia's "well-established rules and regulatory guidelines for the apportionment of impairment." We disagree.

In *Duff*, this Court found that:

The Supreme Court of Appeals of West Virginia has previously recognized that radiographic evidence of degenerative changes alone is not sufficient to allow apportionment for preexisting injury. There must be something more, some evidence of a detrimental effect on work or the activities of daily living. Where such evidence of impairment is lacking, the Court has found that apportionment was not appropriate. *See Galaxy Distributing of WV, Inc. v. Spangler*, No. 19-0803, 2020 WL 6559079 (W. Va. Nov. 6, 2020) (memorandum decision) (unanimous decision) (the Board did not err in finding that apportionment was arbitrary and speculative where preexisting changes to right shoulder did not appear to affect the claimant's work or daily activities); *Minor v. West Virginia Division of Motor Vehicles*, No. 17-0077, 2017 WL 6503113, at *2 (W. Va. Dec. 19, 2017) (memorandum decision) (3-2 decision reversing Board of Review decision apportioning for preexisting condition) ("While the 2004 x-ray may have shown degenerative changes [to the right knee], those changes did not appear to affect Mr. Minor's ability to work or his activities of daily living. Therefore, we agree

3

with the Office of Judges' findings that . . . . apportionment of the impairment rating due to the 2004 x-ray was improper. . . .").

*Duff* at 558, 882 S.E.2d at 924.

Here, the Board found that Dr. Guberman's report was the most reliable because he did not apportion for Ms. Thomas' preexisting degenerative changes. The Board noted that, prior to the compensable injury, Ms. Thomas' preexisting degenerative changes were asymptomatic, there was no evidence that the changes affected her work or daily life, and she had never received treatment for them. The Board further found that Dr. Guberman's report was the most reliable because he did not apportion, and it granted Ms. Thomas a 25% PPD award based on Dr. Guberman's report.

Upon review, we conclude that the Board appropriately analyzed this case under *Duff* and, further, was not clearly wrong in finding that it was inappropriate to apportion for Ms. Thomas' preexisting conditions when, prior to the compensable injury the changes were asymptomatic, did not affect her life or work, and were only documented by imaging evidence after the injury. The Board was not clearly wrong in finding that Dr. Guberman's report was more persuasive than the reports of Drs. Soulsby and Mukkamala, because Dr. Guberman appropriately refrained from apportioning for asymptomatic preexisting degenerative changes. Finally, the Board was not clearly wrong in determining that Ms. Thomas is entitled to a 25% PPD award based on Dr. Guberman's report.

We find no merit in THS's argument that the Board failed to apply West Virginia's rules and regulatory guidelines in determining whether apportionment was appropriate in this case. Instead, we find that the Board appropriately analyzed the instant case under all appropriate laws, rules, and regulatory guidelines and, further, it did not err in finding that the impairment associated with Ms. Thomas' asymptomatic preexisting degenerative changes were not definitely ascertainable.

Accordingly, we affirm the Board's July 31, 2023, order.

Affirmed.

**ISSUED:** December 27, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge Thomas E. Scarr

4